UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| WYNN RESORTS HOLDINGS, LLC, <br><br> Plaintiff <br><br> v. <br><br> ENCORE SPORTS LOUNGE, INC., <br><br> Defendant | Case No. 2:14-cv-01710-JAD-CWH <br><br> **Order Granting Motion for Default Judgment, Entering Permanent Injunction, and Closing Case** <br><br> [ECF 8] |

Plaintiff Wynn Resorts Holdings, LLC seeks a default judgment against the lone defendant in this trademark-infringement suit, Encore Sports Lounge, Inc.[1] Encore has not appeared or opposed.[2] Having weighed the factors outlined by the Ninth Circuit in *Eitel v. McCool*, I grant the motion and permanently enjoin the Encore Sports Lounge, Inc. from using Wynn's *Encore* marks.

**Background**

**A.     Wynn Resorts Holdings' trade rights in the "Encore" marks**

Plaintiff Wynn Resorts Holdings, LLC ("Holdings") provides nightclub, cocktail lounge, and bar services under the "Encore" brand at the Encore and Wynn Las Vegas resort casinos in Las Vegas, Nevada.[3] And Holdings owns federal trademark registrations with the United States Patent and Trademark Office for the work mark "Encore" (Registration Nos. 4,136,015, 3,703,684, and 3,610,506) and for the distinctive design logo:

*Encore*

---

[1] ECF 8.  Wynn filed a supplemental brief in support of its motion on November 4, 2015, ECF 14, which I also consider.

[2] ECF 7 (clerk's default); 12 (notice of non-opposition).

[3] ECF at 2–3.

1  (Registration No. 3,828,920).[4]  Holdings also owns Nevada Secretary of State registrations for
2  the word mark "Encore" (Registration Nos. E0059612014-2 and E0059622014-3).[5]
3       Since 2008, Holdings has continuously offered luxury entertainment, nightclub, cocktail
4  lounge, and bar services under its "Encore" brand to millions of consumers each year at the
5  Encore and Wynn Las Vegas resorts in Las Vegas.[6]  Holdings represents that the Encore and
6  Wynn Las Vegas properties are considered among the finest hotels in the world and boast more
7  Forbes five-star awards than any other casino resorts worldwide.[7]  Holdings has continuously
8  used the "Encore" marks at the Encore and Wynn Las Vegas casino resorts and in nationwide
9  promotion of the services offered at the resorts, including on signage, apparel, souvenirs, and
10  promotional materials.[8]
11       Holdings has invested substantial sums of money to advertise, promote, and protect the
12  "Encore" marks in print, broadcast, and internet media and protects its rights in the "Encore"
13  marks by asserting its rights against trademark infringers.[9]  Additionally, millions of American
14  and international patrons have visited the Encore and Wynn properties in Las Vegas and their
15  websites, including www.wynnlasvegas.com and www.encorebeachclub.com, and thereby have
16  been exposed to the "Encore" marks.[10]  As a result, the "Encore" marks have developed a
17  substantial level of customer recognition both nationally and internationally.[11]

---

[4] *Id.* at 3–4.

[5] *Id.* at 4.

[6] *Id.* at 3.

[7] *Id.*

[8] *Id.* at 5.

[9] *Id.*

[10] *Id.*

[11] *Id.*

B.     **The Encore Sports Lounge**

Defendant promotes and operates a nightclub, bar, entertainment, and cocktail lounge in Houston, Texas, under the name "Encore Sports Lounge."[12]  Defendant also operates two Facebook accounts and a Foursquare page that promote those services under the "Encore Sports Lounge" mark.[13]

Holdings alleges that defendant's "Encore Sports Lounge" trademark is confusingly similar to plaintiff's "Encore" trademarks[14] because the "Encore Sports Lounge" mark incorporates the "Encore" word mark in its entirety.[15]  Holdings further asserts that defendant copied the design and style of the "Encore" design mark[16] and by using a trademark that is confusingly similar to plaintiff's trademarks in connection with similar services to those Holdings offers, defendant is misleading customers into believing that its business activities are affiliated with the Encore resort.[17]  Holdings further alleges that defendant is attempting to trade on the goodwill associated with the "Encore" marks and to create an association between defendant's services and Holdings' services in a manner that is likely to harm the goodwill represented by the "Encore" marks.[18]  Holdings provided defendant with actual notice of plaintiff's "Encore" marks in December of 2013, but defendant continues to use them.[19]

---

[12] *Id.* at 2, 6.

[13] *Id.*

[14] *Id.* at 2, 7.

[15] *Id.* at 6.

[16] *Id.*

[17] *Id.* at 2, 7.

[18] *Id.* at 7.

[19] *Id.* at 6, 7.

**C.     Encore was served with—and ignored—the complaint.**

On October 16, 2014, Holdings filed its complaint for (1) trademark infringement under 15 U.S.C. § 1114; (2) unfair competition under 15 U.S.C. § 1125(a); (3) trademark dilution under 15 U.S.C. § 1125(c); (4) trademark infringement under Nevada Revised Statutes § 600.420; (5) trademark dilution under Nevada Revised Statutes § 600.435; (6) common law trademark infringement; and (7) consumer fraud under Nevada Revised Statutes § 41.600.[20] The complaint requests a permanent injunction prohibiting defendant from using the "Encore" marks.[21] Defendant was served with process via personal service on a manager at the Encore Sports Lounge on October 25, 2014, but defendant has not answered or otherwise appeared in this case.[22] Holdings moved the clerk to enter default, and the clerk entered it.[23] Holdings then moved for a default judgment[24] and served the request for entry of clerk's default, the clerk's default, and the motion for default judgment on defendant via certified mail.[25]

Based on the information provided in the motion for default judgment, the court was unable to determine whether "Bradley, Manager" had authority to accept service of process on behalf of defendant. So Magistrate Judge Hoffman ordered Holdings to file a supplemental brief.[26] Holdings' supplemental brief and supporting affidavits[27] establish that "Bradley, Manager" had authority to accept service of process on defendant's behalf, so this court has

---

[20] *Id.* at 7–12.

[21] *Id.* at 13; ECF 8 at 24 (stating that plaintiff seeks only injunctive relief, not monetary damages).

[22] ECF 5 (summons returned executed).

[23] ECF 6 (motion for default); ECF 7 (default).

[24] ECF 8.

[25] ECF 9.

[26] ECF 13 at 2–3.

[27] ECF 14.

jurisdiction to enter a judgment against Encore Sports Lounge, Inc.

## Discussion

**A.    Default Judgment**

Under Federal Rule of Civil Procedure 55(b)(2), the court may enter default judgment if the clerk previously has entered default based on the defendant's failure to defend. After entry of default, the factual allegations in the complaint are taken as true, except those relating to damages.[28] Whether to grant a default judgment lies within the court's discretion.[29] In deciding whether to enter a default judgment, the court considers the seven factors outlined by the Ninth Circuit in *Eitel v. McCool*:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.[30]

A default judgment generally is disfavored because "[c]ases should be decided upon their merits whenever reasonably possible."[31]

Default judgment is appropriate under the circumstances of this case. Holdings pursued its claims against defendant to prohibit defendant from continuing to use the infringing "Encore" mark. Defendant has failed to participate in this case despite being personally served with process through its authorized agent and being served with plaintiff's request for entry of clerk's default, the clerk's default, and the motion for default judgment via certified mail. Given defendant's failure to participate in this case, Holdings would be prejudiced by having to expend

---

[28] *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987); FED. R. CIV. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

[29] *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986).

[30] *Id.* at 1471–72.

[31] *Id.* at 1472.

additional resources litigating an action that appears to be uncontested. Further, without a judgment against defendant forbidding its infringement, Holdings has no other recourse to prevent defendant's further infringement of the "Encore" marks.

The complaint sufficiently sets forth Holdings' trademark infringement and related claims under the liberal pleading standard in Rule 8 of the Federal Rules of Civil Procedure. And Holdings' claims have substantive merit based on its federal and state trademark registrations for the "Encore" marks, which demonstrate that Holdings has a protectable ownership interest in the marks.[32]

As to the likelihood of confusion between plaintiff's "Encore" marks and defendant's infringing "Encore" mark, plaintiff provides examples of its websites, along with examples of defendant's promotional materials and screen shots of defendant's Facebook and Foursquare pages, which evidence that the marks are virtually identical and that the parties provide similar services.[33] The sum of money at stake has no bearing in this analysis because plaintiff is requesting only permanent injunctive relief, not monetary relief. Given defendant's failure to participate in this case, a dispute over the appropriateness of injunctive relief or any other material facts is unlikely.

There is no evidence that defendant's default in this case is due to excusable neglect. Despite being served with process via personal service—and the request for entry of clerk's default, the clerk's default, and the motion for default judgment via certified mail—defendant has not responded. Given defendant's failure to participate in this case, a decision on the merits is "impractical, if not impossible."[34] Entry of a default judgment therefore is appropriate.

**B.  Permanent Injunctive Relief**

The Lanham Act permits a court to grant injunctions "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent further trademark

---

[32] ECF 8-2 at 1–13.

[33] *Compare* ECF 8-2 at 14–22 *with* ECF 8-2 at 23–36.

[34] *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

infringement.[35] A plaintiff seeking a permanent injunction must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."[36] "[A]ctual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark infringement action."[37]

     A permanent injunction is appropriate under the circumstances of this case because Holdings has shown irreparable injury. Holdings has not provided evidence of actual confusion between the marks, which would be difficult to do given defendant's failure to participate in this case. But taking the facts in plaintiff's complaint as true and drawing all reasonable inferences from them, it appears that Holdings has suffered, and will continue to suffer, irreparable harm due to defendant's use of the infringing mark. Holdings has shown that, since 2008, it has been building its reputation by continuously using the "Encore" marks at the Encore and Wynn Las Vegas casino resorts and in nationwide promotion of the services offered at the resorts, including on signage, apparel, souvenirs, and promotional materials. Though Holdings does not provide a precise monetary amount, it represents that it has invested substantial amounts of money to advertise, promote, and protect the "Encore" marks in print, broadcast, and internet media. Plaintiff's efforts are evidenced by the screen shots of its various websites promoting the "Encore" mark. Plus, millions of American and international patrons have visited the Encore and Wynn properties in Las Vegas and their websites and thereby have been exposed to the "Encore" marks.

     Meanwhile, defendant has marketed its nightclub, bar, entertainment, and cocktail lounge

---

[35] 15 U.S.C. § 1116; *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006).

[36] *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014) (quotation omitted).

[37] *Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013).

services using confusingly similar "Encore" marks, presumably to capitalize on plaintiff's internationally recognized brand. Monetary damages would be insufficient to compensate Holdings for the injury to its goodwill. And although defendant has been on actual notice of the existence of plaintiff's marks since receiving a cease-and-desist letter in December of 2013, there is no indication that defendant will stop using the infringing mark without injunctive relief.[38] Given the similarity between the marks, injunctive relief also serves the interests of consumers, who are likely to be confused by the marks. A permanent injunction is therefore appropriate.

## Conclusion

Accordingly, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that **plaintiff Wynn Resorts Holdings, LLC's Motion for Default Judgment [ECF 8] is GRANTED.**

IT IS FURTHER ORDERED that defendant Encore Sports Lounge, Inc. is **PERMANENTLY ENJOINED** from using Wynn Resorts Holdings, LLC's "Encore" marks in commerce or in connection with any internet website, domain name, or in hidden text and metatags, including but not limited to the following design mark:

*Encore*

IT IS FURTHER ORDERED that the Clerk of Court is instructed to enter default judgment in favor of Wynn Resorts Holdings, LLC and against Encore Sports Lounge, Inc. and **CLOSE THIS CASE.**

DATED: March 8, 2016

_____
Jennifer A. Dorsey
United States District Judge

---

[38] ECF 8-2 at 37–39.